UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DANA BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:13CV588 TIA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial
review of the Commissioner's final decision denying Dana Brooks' application for
disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§
401, *et seq.*, and application for supplemental security income under Title XVI of
the Act, 42 U.S.C. §§ 1381, *et seq.* All matters are pending before the undersigned
United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C.
§ 636(c). Because the Commissioner's final decision is supported by substantial
evidence on the record as a whole, it is affirmed.

## I. Procedural History

On January 21, 2011, plaintiff Dana Brooks applied for disability insurance
benefits (DIB) and supplemental security income (SSI), claiming she became

disabled on November 1, 2010, because of panic disorder, anxiety, depression, and hepatitis C. (Tr. 132-37, 138-44, 173.) Upon initial consideration, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 85, 86, 90-94.) On January 17, 2012, a hearing was held before an administrative law judge (ALJ) at which plaintiff testified. (Tr. 48-84.) On March 21, 2012, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform her past relevant work. (Tr. 28-42.) On December 18, 2012, the Appeals Council denied plaintiff's request to review the ALJ's decision. (Tr. 10-14.) The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In the instant action for judicial review, plaintiff raises numerous claims that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, plaintiff claims that the ALJ improperly weighed the opinion evidence in this cause and failed to accord controlling weight to the opinion of her treating physician, Dr. Modad. Plaintiff further contends that the ALJ erred in determining her complaints not to be credible. Plaintiff also argues that the ALJ failed to consider the combined effect of all of her impairments and erred in relying on vocational expert testimony that was based on an incomplete and faulty hypothetical question. Plaintiff requests that the final decision be reversed and that judgment be entered in her favor, or that the matter be remanded for further consideration. For the following reasons, the ALJ did not err in her determination.

## II. Testimonial Evidence Before the ALJ

A.    Plaintiff's Testimony

At the hearing on January 17, 2012, plaintiff testified in response to questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was forty-two years of age.  Plaintiff stands five feet, two inches tall and weighs 165 pounds.  Plaintiff is separated from her husband and has three adult children.  Plaintiff lives in a mobile home with her boyfriend.  Plaintiff completed the tenth grade in high school and obtained her GED.  Plaintiff subsequently attended college for two years.  (Tr. 54-56.)

Plaintiff's Work History Report shows that plaintiff worked as a deli worker in a grocery store in 2005 and as a janitor in 2005 and 2006.  In 2007, plaintiff worked as a cashier in a truck stop.  From October 2007 to January 2008, plaintiff worked as a laborer in a factory.  From June to October 2010, plaintiff worked as a cashier in a gas station.  (Tr. 180.)  Plaintiff testified that she left this job because of her feelings of panic and her urge to "run out the back" door when people would arrive.  Plaintiff testified that she worked in housekeeping during the summer of 2011 but left that job because of her panic episodes.  (Tr. 57-58.)

Plaintiff testified that she was currently unable to work because of her panic and her inability to leave the house when she is alone.  Plaintiff testified that she feels the need to run if she is around people too long, including her mental health

providers. (Tr. 59, 70.) Plaintiff testified that seeing people or being seen by people overwhelms her because she feels everyone is watching her or talking about her. (Tr. 75.) Plaintiff testified that her throat closes up and she cannot breathe when she has her panic attacks. Plaintiff testified that she uses an inhaler for such episodes, although the inhaler was prescribed for chronic obstructive pulmonary disease. (Tr. 67.)

Plaintiff testified that she has a fear of being in a motor vehicle accident, cannot drive, and has difficulty riding as a passenger in a car. Plaintiff testified that she almost jumped out of a moving truck on one occasion because of her fear. (Tr. 81.)

Plaintiff testified that she was diagnosed with hepatitis C one year prior. Plaintiff testified that she was checked for hepatitis C when she learned her sister had the disease. (Tr. 61, 64.) Plaintiff testified that she receives injections and takes medication for the condition. Plaintiff testified that the medication makes her nauseous and causes vomiting and "head rushes." (Tr. 65.)

Plaintiff testified that she was diagnosed with carpal tunnel syndrome several years prior when she worked at the factory and she used to wake up in pain during that time. Plaintiff testified that she currently experiences numbness and tingling in her hands. (Tr. 81-82.)

Plaintiff testified that her stress and medication also cause her to have

constant headaches for which she takes Tylenol. Plaintiff testified that her medication also causes her to have flu-like pain all over. (Tr. 61-62, 71.)

Plaintiff testified that she regularly sees Nurse Practitioner Sandy for medication refills and that NP Sandy worked for Drs. Geronimo and Modad. Plaintiff testified that she saw Dr. Geronimo until Dr. Modad took over his practice. Plaintiff testified that she had visited this treatment team once a month but had seen Dr. Modad only once. (Tr. 60-61.) Plaintiff testified that she also regularly visits an eye doctor, Dr. Dalton, because vision problems are a side effect of hepatitis C. Plaintiff testified that her vision is worsening. (Tr. 63.)

Plaintiff testified that she frequently has night terrors and does not sleep well. Plaintiff testified that her headaches are usually worse in the morning from the stress of the previous night. (Tr. 72.) Plaintiff testified that her medical provider has offered a sleep aid for her, but that she has not taken it because of her concern that she might not wake up if she needs to. (Tr. 82-83.)

Plaintiff testified that she has problems with her memory and sometimes cannot remember when or if she has taken her medication. Plaintiff testified that she sometimes forgets when she is cooking, causing kitchen fires. (Tr. 73.) Plaintiff testified that she has difficulty following recipes and continues to make errors even though she has read through a recipe multiple times. (Tr. 74.) Plaintiff testified that she also has difficulty making decisions and does not trust her own

judgment.  (Tr. 75.)  Plaintiff testified that she would not trust herself to complete assigned tasks and has had such difficulty within the previous few years.  (Tr. 80.)

As to her daily activities, plaintiff testified that she usually wakes up in a panic around 4:00 a.m. and gets up and paces around or runs her hands or wrists under cold water to calm down.  Plaintiff testified that she then takes her medication.  Plaintiff testified that she is able to get herself ready but experiences pain and dizziness while doing so.  Plaintiff testified that she sometimes naps during the day because of her sleeping difficulties at night.  (Tr. 75-76.)  Plaintiff testified that she sometimes cooks but cannot be alone in the kitchen.  Plaintiff testified that she does laundry but sometimes forgets to put the clothes in the dryer before starting the dryer.  (Tr. 77-78.)  Plaintiff testified that she does not watch television very often and no longer reads because of concentration difficulties.  (Tr. 78-79.)  Plaintiff testified that she goes grocery shopping once a month at either a local market or at Wal-Mart.  Plaintiff testified that she likes to spend time with her sister and mom and a couple of friends, but that she will not go to places to see them.  (Tr. 74-75.)

B.    Vocational Expert Interrogatories

On February 3, 2012, John F. McGowan, a vocational expert, answered written interrogatories put to him by the ALJ.  (Tr. 220-26.)

Mr. McGowan classified plaintiff's past relevant work as a cleaner/

housekeeper, cashier, and bench assembler as light with an SVP level of two. (Tr. 221-23.)

Mr. McGowan was asked to consider an individual of plaintiff's age and past relevant work and who had at least a high school education. Mr. McGowan was further asked to assume the individual had no exertional limitations but had the following nonexertional limitations:

> can perform work that does not involve handling food preparation; understand and carry out simple work instructions; interact occasionally with co workers and supervisors [on] a casual and infrequent basis; adapt to changes in the routine work setting; would perform best in settings where the claimant could work independently and work at a flexible pace.

(Tr. 224.) Mr. McGowan responded that such a person could perform plaintiff's past work as a housekeeper and bench assembler as defined in the *Dictionary of Occupational Titles*. (Tr. 224-25.)

### III. Medical Records Before the ALJ

Plaintiff was admitted to the emergency department at Missouri Baptist Sullivan Hospital on March 11, 2010, for flu symptoms. Plaintiff was given Albuterol inhaler for wheezing. Plaintiff was diagnosed with acute bronchitis and acute sinusitis and was discharged that same date in stable condition. (Tr. 345-50.)

On April 13, 2010, plaintiff reported to Family Nurse Practitioner (FNP) Kathleen Walters that she was experiencing anxiety and panic attacks. FNP Walters noted plaintiff to be anxious, and Paxil was prescribed. Plaintiff was

referred to Dr. Barton for further evaluation.  (Tr. 262-64.)

Plaintiff visited Dr. Rod T. Barton on April 22, 2010, and reported having severe panic attacks a few times every day and that she had a fear of the public. Plaintiff reported that she stays home during the day and sleeps and then experiences sleep problems at night with severe nightmares.  Plaintiff also reported having headaches and abdominal pain.  Dr. Barton noted plaintiff to have flight of thoughts and ideas, to have tangential thoughts, and to talk with stress in her voice. Physical examination showed tenderness to the abdomen with palpation.  Mental status examination showed plaintiff's recent memory to be impaired.  Plaintiff's language use/comprehension was also noted to be impaired.  Dr. Barton noted plaintiff's fund of knowledge to be decreased and that she had impaired intellectual functioning.  Plaintiff's reasoning was noted to be concrete.  Plaintiff was noted to have suspicious perceptions and obsessions.  Dr. Barton diagnosed plaintiff with anxiety disorder, depressive disorder, panic disorder, and post-traumatic stress disorder.  Plaintiff was prescribed Klonopin and Depakote and was instructed to return in two weeks.  (Tr. 259-61.)

Plaintiff returned to Dr. Barton on May 6, 2010, and reported her condition to have improved with medication but that she experienced fatigue with Klonopin. Dr. Barton noted plaintiff's general appearance and behavior to be normal except that her mood was anxious.  Plaintiff was prescribed Depakote and was instructed

to return in three to four weeks.  (Tr. 256-58.)

Plaintiff visited FNP Walters on May 27, 2010, who noted plaintiff to appear well.  FNP Walters noted plaintiff to be taking Paxil.  Mental status examination was normal except plaintiff's mood was noted to be anxious.  Plaintiff was prescribed BuSpar (Buspirone) and was instructed to continue with Paxil.  Outpatient counseling was recommended.  (Tr. 254-55.)

On June 7, 2010, plaintiff reported to FNP Walters that she was feeling much better and currently experienced panic attacks only two or three times a week instead of every day.  Plaintiff reported that BuSpar was helping her a lot.  FNP Walters noted plaintiff to be pleasant and cooperative.  Plaintiff's mood and affect were noted to be bright.  Plaintiff was in no acute distress.  Plaintiff was continued in her diagnosis of anxiety and was instructed to increase her dosage of BuSpar.  (Tr. 253.)

Plaintiff returned to FNP Walters on July 8, 2010, and reported that the increased dosage of BuSpar made her tired and that she felt better on her original, reduced dosage.  Plaintiff also reported that Paxil did not help her condition.  Plaintiff reported continued panic attacks two or three times a week, especially when in a store or driving a car.  Plaintiff also reported having right knee pain, bilateral hip pain, and carpal tunnel symptoms in both hands.  Tenderness was noted about the right knee and with internal rotation of the hips.  X-rays were

ordered and a knee immobilizer was provided.  Anaprox was prescribed for pain.
Plaintiff was also instructed to discontinue Paxil and to resume her lower dosage of
BuSpar.  Zoloft (Sertraline) was prescribed.  Klonopin was also prescribed for
breakthrough anxiety.  (Tr. 252.)  On July 14, plaintiff reported to FNP Walters
that Zoloft was working well and that she felt much better.  Plaintiff reported
taking Klonopin on two occasions.  Plaintiff also reported her knee pain to be
much better.  Laboratory testing was ordered, and plaintiff was instructed to return
in one month.  (Tr. 250.)

On July 21, 2010, FNP Walters noted recent testing to yield positive results
for hepatitis C.  Plaintiff denied having any symptoms.  Repeat lab testing was
ordered, and it was noted that plaintiff would be sent to a gastroenterologist.  (Tr.
249.)

Plaintiff visited Dr. Kevin G. Byrne on September 2, 2010, for consultation
regarding her hepatitis C condition.  Plaintiff reported feeling depressed, being
forgetful and nervous, and experiencing loss of sleep.  Plaintiff also reported
having shortness of breath and stomach pain.  It was noted that plaintiff had
previously been diagnosed with bronchitis, asthma, panic disorder, bipolar
disorder, and irritable bowel syndrome.  Plaintiff's current medications were noted
to be Buspirone and Sertraline.  Physical examination was unremarkable.  Dr.
Byrne noted that plaintiff was a good candidate for treatment of hepatitis C but that

her anxiety issues needed to be watched. Plaintiff was instructed to return in one month to discuss final questions before beginning treatment. (Tr. 242-43.)

Plaintiff visited FNP Walters on September 16, 2010, for follow up of her anxiety disorder. Plaintiff reported that she stopped taking Zoloft several weeks prior because of its possible counteraction with treatment for hepatitis C, but that she has since felt more anxious. Mental status examination was unremarkable except plaintiff was noted to be anxious. Plaintiff was prescribed Celexa. It was recommended that plaintiff participate in outpatient counseling. (Tr. 247-48.)

Plaintiff returned to Dr. Byrne on October 21, 2010 who noted that plaintiff stopped taking her anti-anxiety medication. Plaintiff was noted to be anxious. It was noted that plaintiff needed psychiatric clearance before her hepatitis C could be treated, and a referral to a psychiatrist was made. (Tr. 241.)

Plaintiff visited Dr. Mark D. Geronimo on December 7, 2010, with complaints of anxiety aggravated by crowded areas. Plaintiff reported feeling anxious, having fearful thoughts, panic attacks, and sleep disturbances but that she was not having any difficulty meeting home, work, or social obligations. Plaintiff reported her symptoms to improve with medication but that she was not compliant with her medication. It was noted that plaintiff's psychiatric condition prevented her from starting treatment for hepatitis C. Dr. Geronimo noted plaintiff's current medications to be Vistaril (Hydroxyzine) as needed for anxiety, and Buspirone.

Physical examination was unremarkable.  Psychiatric examination showed plaintiff to be oriented times four.  Plaintiff had a normal affect and was noted not to be anxious or tearful.  Dr. Geronimo noted plaintiff to have normal knowledge, judgment, attention span, and concentration.  Plaintiff did not exhibit compulsive behavior.  Nor did she have flight of ideas, forgetfulness, thoughts of grandiosity, memory loss, or suicidal ideation.  Dr. Geronimo diagnosed plaintiff with chronic panic disorder and referred her to psychiatry.  (Tr. 336-38.)

On December 20, 2010, plaintiff underwent an intake assessment at Pathways Community Behavioral Healthcare upon referral by Dr. Geronimo. Plaintiff reported that she was experiencing isolation, panic attacks, crying spells, depression, difficulty concentrating, loss of sleep, nightmares, impulsiveness, hyperactivity, racing thoughts, social anxiety, and auditory and visual hallucinations.  Plaintiff also reported having recently been diagnosed with hepatitis C, that she had been terminated from her last two employment positions, and that she was currently dealing with legal issues.  CSS Lisa Friend diagnosed plaintiff with bipolar disorder with psychotic features and assigned a Global Assessment of Functioning (GAF) score of 47.  Plaintiff was scheduled for psychiatric evaluation with Dr. Gowda.  (Tr. 276-83.)

Plaintiff returned to Dr. Geronimo on December 28, 2010, and reported her anxiety and panic to have improved but that she continued to experience

anxiousness, fearful thoughts, and panic attacks.  Plaintiff reported BuSpar and

Vistaril to be helpful.  Psychiatric examination showed plaintiff to exhibit no

unusual anxiety or evidence of depression.  Dr. Geronimo diagnosed plaintiff with

generalized anxiety disorder, improving, and instructed plaintiff to increase her

dosage of Buspirone.  (Tr. 334-35.)

On January 7, 2011, plaintiff underwent a health care consultation for her

hepatitis C at Patients First Health Care.  Plaintiff complained of intermittent

nausea and abdominal pain as well as alternating constipation and diarrhea.

Plaintiff also complained of fatigue and back pain.  Dr. Barbara Dixon-Scott noted

a 2000 diagnosis of irritable bowel syndrome.  Dr. Dixon-Scott also noted current

diagnoses of panic disorder without agoraphobia, depression, and anxiety.

Plaintiff's current medications were noted to be Buspirone and Hydroxyzine.

Physical examination was unremarkable.  There was no tenderness to plaintiff's

abdomen, no liver enlargement, no hepatic tenderness, and no ascites.  Plaintiff had

full range of motion about the hands.  No edema was present.  Psychiatric

examination showed plaintiff to be oriented times four and to have appropriate

mood and affect.  Symptomatic care was discussed as well as alcohol cessation.

Laboratory testing was ordered.  (Tr. 285-88.)

On March 16, 2011, Barbara Markway, Ph.D., a psychological consultant

with disability determinations, completed a Psychiatric Review Technique Form in

which she opined that plaintiff's bipolar disorder, depression, anxiety disorder, and panic disorder without agoraphobia caused moderate limitations in plaintiff's activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace; and resulted in no repeated episodes of decompensation of extended duration. Dr. Markway opined that plaintiff's impairments were severe but did not meet or equal a listing. (Tr. 290-301.) In a Mental Residual Functional Capacity (RFC) Assessment completed that same date, Dr. Markway opined that in the domain of Understanding and Memory, plaintiff was moderately limited in her ability to understand and remember detailed instructions, but otherwise was not significantly limited. In the domain of Sustained Concentration and Persistence, Dr. Markway opined that plaintiff was moderately limited in her ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to work in coordination with or proximity to others without being distracted by them, but otherwise was not significantly limited. In the domain of Social Interaction, Dr. Markway opined that plaintiff was moderately limited in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Markway further opined that plaintiff was not significantly limited in her ability to ask simple questions or request assistance, or

to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. In the domain of Adaptation, Dr. Markway opined that plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting and to travel in unfamiliar places or use public transportation. Dr. Markway further opined that plaintiff was not significantly limited in her ability to be aware of normal hazards and take appropriate precautions, or to set realistic goals or make plans independently of others. Dr. Markway concluded that plaintiff retained the ability to understand and remember simple instructions; can carry out simple work instructions; can maintain adequate attendance and sustain an ordinary work routine without special supervision; can interact adequately with peers and supervisors in a work setting where demands for social interaction are not primary job requirements; and can adapt to most usual changes common to a competitive work setting. (Tr. 302-04.)

Plaintiff visited Thomas J. Spencer, Psy.D., on April 28, 2011, for a psychological evaluation for Medicaid eligibility. Plaintiff reported that she lost Medicaid coverage a couple of months prior when she did not complete required paperwork for a redetermination of benefits and that she missed her appointment with a Pathways psychiatrist because of her lost coverage. Plaintiff reported that she has had worsening panic attacks since she stopped taking her medication. Plaintiff reported that she feels that people are always looking at her and talking

about her.  Dr. Spencer noted plaintiff to have poor eye contact, wavered speech, and to be restless and fidgety.  Plaintiff reported that she experiences panic attacks both during the day and night and sometimes wakes in a panicked state.  Plaintiff reported that she avoids leaving the house because the panic worsens when she is away from home.  Plaintiff reported having thoughts of suicide and articulated specific plans to follow through but no actual attempts.  Plaintiff reported feeling depressed and worthless.  Plaintiff reported having poor attention, concentration, and memory.  Plaintiff reported that she sometimes thinks she hears someone yelling her name as she falls asleep.  Plaintiff reported her last employment to be at a convenience store in October 2010 and that she was able to work while being treated with medication.  Plaintiff reported that she currently spends the day at the house playing on her phone.  Plaintiff reported spending time outside on the porch or in the yard and that she shares cooking and cleaning chores with her boyfriend. Mental status examination showed plaintiff to be cooperative.  Plaintiff's mood was noted to be down and her affect anxious.  Dr. Spencer noted plaintiff's flow of thought to be intact and her insight and judgment to be fairly intact.  Plaintiff was oriented times four.  Memory functions were intact.  Dr. Spencer diagnosed plaintiff with panic disorder with agoraphobia; major depressive disorder, recurrent, moderate to severe; and cannabis abuse.  Dr. Spencer assigned a GAF score of 45-50.  Dr. Spencer opined that plaintiff had a mental illness that

continued to interfere with her ability to engage in employment status for her age, training, experience, and/or education. Dr. Spencer further opined that the duration of the illness could exceed twelve months but could improve with appropriate treatment and compliance. (Tr. 315-19.)

A sonogram of the abdomen dated July 15, 2011, showed plaintiff's liver to be normal in size without evidence of focal disease. (Tr. 359.)

On July 22, 2011, Dr. Mark A. Dalton diagnosed plaintiff with dry eyes upon completion of an eye examination. (Tr. 340-41.)

Plaintiff returned to Dr. Geronimo on July 26, 2011, and reported her anxiety to cause some difficulty meeting home, work, or social obligations. Plaintiff reported experiencing anxiousness, fearful thoughts, compulsive thoughts or behaviors, and panic attacks. Plaintiff reported that she stopped taking her medication because of financial reasons but that the recently obtained Medicaid coverage again. Plaintiff reported that she needed to be mentally stable before beginning treatment for hepatitis C. Dr. Geronimo noted recent testing that showed plaintiff's liver to be normal. Psychiatric examination was normal in all respects, with plaintiff displaying no anxiousness, compulsive behavior, fearfulness, forgetfulness, memory loss, or paranoia. Dr. Geronimo prescribed an SSRI[1] for plaintiff and instructed her to restart her Buspirone. Plaintiff was

[1] Selective seratonin reuptake inhibitor – a form of antidepressant medication to balance the

instructed to continue with counseling and psychotherapy at Pathways. (Tr. 331-32.)

A liver biopsy taken August 2, 2011, showed Grade 1 mild activity and Stage 1 portal fibrosis. Dr. Dixon-Scott recommended that plaintiff receive hepatitis A and B vaccines and begin pegylated interferon/ribivarin therapy upon receiving clearance from her physician regarding her depression and anxiety. (Tr. 397-98.)

Plaintiff visited Dr. Geronimo on August 23, 2011, for complaints of depression. Plaintiff complained of experiencing anxiousness and having fearful thoughts, compulsive thoughts or behaviors, depressed mood, diminished interest or pleasure, fatigue, manic episodes, panic attacks, and sleep disturbances. Plaintiff reported her recent medications to have somewhat helped but that she continued to have sleepless nights with racing thoughts and anxiety. Psychiatric examination was normal in all respects. Dr. Geronimo diagnosed plaintiff with poorly controlled bipolar affective disorder, depressed. Risperdal was prescribed and plaintiff was instructed to increase her dosage of SSRI. Plaintiff's generalized anxiety disorder was noted to be improving, and plaintiff was continued on her medications. (Tr. 328-30.)

On September 6, 2011, plaintiff reported to Dr. Geronimo that she was doing

chemicals in the brain. Antidepressants, National Institute of Mental Health, *Medline Plus* (last

well with Risperdal, was calm, and had no anxiety or depression. Dr. Geronimo noted plaintiff to be taking Buspirone, Risperdal, and Paxil and that she was improving with medication. Plaintiff was continued on her current medication regimen. (Tr. 326-27.)

On September 21, 2011, Dr. Dalton informed Dr. Dixon-Scott that plaintiff was cleared from an ophthalmologic standpoint for hepatitis C treatment. (Tr. 343.)

Plaintiff visited FNP Sandy Hagene on November 21, 2011, for consultation regarding her anxiety and for disability paperwork. It was noted that plaintiff had been diagnosed with hepatitis C, panic disorder, and asthma and was taking Paxil, Buspirone, and Ventolin inhaler. Review of systems was negative for fatigue, vision loss, abdominal pain, and change in bowel habits. Physical examination was normal. No other examination was performed. It was noted that paperwork was completed for panic disorder. (Tr. 404-05.)

On that same date, November 21, 2011, Dr. Musa Modad and FNP Hagene completed a Physical RFC Assessment wherein they opined that plaintiff could walk eight hours in an eight-hour workday, work eight hours in an eight-hour workday, and sit and/or stand four hours in an eight-hour workday. They further opined that plaintiff could occasionally lift and carry up to fifty pounds and

---

reviewed July 7, 2014)< http://www.nlm.nih.gov/medlineplus/antidepressants.html>.

frequently carry up to twenty pounds.  They further opined that plaintiff could not
use her hands for repetitive fine manipulation, noting plaintiff's complaints of
bilateral hand numbness and tingling associated with carpal tunnel.  It was noted
that plaintiff experiences mild pain on account of her bilateral hand pain and
numbness, which was objectively indicated by reduced range of motion and
subjectively indicated by complaints of pain, poor interpersonal relationships, and
irritability.  It was noted that rest and taking ibuprofen as needed relieved
plaintiff's pain.  It was further opined that plaintiff could occasionally and/or
frequently engage in all postural activities.  It was opined that plaintiff could never
tolerate environmental situations such as exposure to unprotected heights, being
around moving machinery, exposure to marked temperature changes, driving
automotive equipment, exposure to noise, and exposure to dust/fumes/gases
because such circumstances cause panic attacks.  It was opined that plaintiff was
physically limited because of her stamina, pain, and panic and was mentally
limited in concentration, remembering, and reasoning.  It was opined that plaintiff
had a decreased mental capacity for working and should not work because of
difficulties caused by her panic attacks.  (Tr. 399-403.)

In a Mental RFC Assessment completed that same date, Dr. Modad and FNP
Hagene opined that in the domain of Daily Living, plaintiff was markedly limited
in her ability to relate in social situations; moderately limited in her ability to cope

with stress, function independently, behave in an emotionally stable manner, and be reliable; and slightly limited in her ability to care for herself, dress herself and meet personal needs, and maintain personal appearance. With respect to Social Functioning, it was opined that plaintiff was extremely limited in her ability to visit friends, relate in social situations, and travel on public transportation; markedly limited in her ability to interact with the general public and accept instructions and respond to criticism; moderately limited in her ability to ask simple questions or request assistance; and slightly limited in her ability to maintain socially acceptable behavior and adhere to basic standards of cleanliness. With respect to Concentration, Understanding, and Memory, it was opined that plaintiff was extremely limited in her ability to understand, remember, and carry out complex instructions as well as in her ability to maintain attention and concentration for extended periods, work in coordination with others, complete a workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. It was further opined that plaintiff was markedly limited in her ability to maintain regular attendance and be punctual, sustain an ordinary routine without special supervision, make simple work-related decisions, and respond to changes in the work setting. It was further opined that plaintiff was moderately limited in her ability to remember work-like procedures and slightly limited in her ability to

understand and remember short and simple instructions.  It was further opined that plaintiff experienced continual episodes of deterioration.  With respect to Occupational Ability, it was opined that plaintiff had poor or no ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, respond to changes in the work setting, or be aware of normal hazards and appropriate precautions.  It was opined that plaintiff had fair ability to use judgment, function independently, and maintain attention; and good ability to follow work rules.  When asked to describe the medical or clinical findings that supported the Assessment, it was noted that plaintiff was currently being treated for panic disorder and hepatitis C.  (Tr. 406-10.)

## IV.  The ALJ's Decision

The ALJ found that plaintiff met the insured status requirements of the Act through June 30, 2012.  The ALJ found that plaintiff had not engaged in substantial gainful activity since November 1, 2010, the alleged onset date of disability.  The ALJ found plaintiff's hepatitis C, major depressive disorder, anxiety disorder, bipolar disorder, and panic disorder with agoraphobia to be severe impairments, but that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 33-36.)  The ALJ found that plaintiff had the RFC to perform work at all exertional levels but with the following nonexertional limitations:

the claimant can perform work that does not involve handling food preparation. The claimant can understand and carry out simple work instructions; interact occasionally with co-workers and supervisors on a casual and infrequent basis; and adapt to changes in the routine work setting. The claimant would perform best in settings where the claimant could work independently and work at a flexible pace.

(Tr. 36.) The ALJ found plaintiff's RFC not to preclude the performance of her past relevant work as a housekeeper and bench assembler. The ALJ therefore found that plaintiff was not under a disability from November 1, 2010, through the date of the decision. (Tr. 36-42.)

## V. Discussion

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir.

2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.     The credibility findings made by the ALJ.

2.     The plaintiff's vocational factors.

3.     The medical evidence from treating and consulting physicians.

4.     The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5.     Any corroboration by third parties of the plaintiff's impairments.

6.     The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir.

1992) (internal citations omitted).  The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall*, 274 F.3d at 1217 (*citing Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

For the following reasons, the ALJ committed no legal error and her decision is supported by substantial evidence on the record as a whole.

A.    Medical Opinion Evidence

Plaintiff contends that the ALJ erred when she failed to accord controlling weight to the opinion evidence from Dr. Modad/FNP Hagene.  Plaintiff also appears to challenge the ALJ's determination to accord light weight to Dr. Spencer's opinion and her determination to accord greater weight to the opinion of the State agency consultant, Dr. Markway.  For the following reasons, the ALJ did not err in her consideration of the opinion evidence.

In evaluating opinion evidence, the Regulations require the ALJ to explain in the decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii).[2] The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)*; see also Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a treating physician has the best opportunity to observe and evaluate a claimant's condition,

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

When a treating physician's opinion is not given controlling weight, the

---

[2] Citations to 20 C.F.R. §§ 404.1527 and 416.927 are to the 2011 version of the Regulations, which were in effect at the time the ALJ rendered the final decision in this cause. This Regulation's most recent amendment, effective March 26, 2012, reorganizes the subparagraphs relevant to this discussion but does not otherwise change the substance therein.

Commissioner must look to various factors in determining what weight to accord the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Such factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the treating physician provides support for his findings, whether other evidence in the record is consistent with the treating physician's findings, and the treating physician's area of specialty. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Regulations further provide that the Commissioner "will always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Against this backdrop, the undersigned reviews plaintiff's claims regarding the weight accorded to the opinion evidence in this cause.

### 1. *Dr. Modad / FNP Hagene*

In her written decision, the ALJ accorded little weight to the co-signed opinions of Dr. Modad and FNP Hagene. Plaintiff claims that because these medical sources were part of Dr. Geronimo's team that rendered treatment for her, they should be considered treating physicians and their opinions should be accorded controlling weight. Because the record fails to show that either Dr. Modad or FNP Hagene were a treating source, the ALJ did not err in according their opinions less than controlling weight.

According to the Regulations, a "treating source" means the claimant's

own physician, psychologist, or other acceptable medical source who
provides you, or has provided you, with medical treatment or
evaluation and who has, or has had, an ongoing treatment relationship
with you. Generally, we will consider that you have an ongoing
treatment relationship with an acceptable medical source when the
medical evidence establishes that you see, or have seen, the source
with a frequency consistent with accepted medical practice for the
type of treatment and/or evaluation required for your medical
condition(s). We may consider an acceptable medical source who has
treated or evaluated you only a few times or only after long intervals
(e.g., twice a year) to be your treating source if the nature and
frequency of the treatment or evaluation is typical for your
condition(s). We will not consider an acceptable medical source to be
your treating source if your relationship with the source is not based
on your medical need for treatment or evaluation, but solely on your
need to obtain a report in support of your claim for disability. In such
a case, we will consider the acceptable medical source to be a
nontreating source.

20 C.F.R. §§ 404.1502, 416.902. The record shows neither Dr. Modad nor FNP

Hagene to have been involved in plaintiff's care other than on November 21, 2011,

when plaintiff visited FNP Hagene for the purpose of completing disability

paperwork. Notably, the RFC Assessments were completed that same date. Nor

does the medical record show that Dr. Modad ever examined or treated plaintiff, or

that plaintiff ever visited him for any purpose. *Contra Shontos v. Barnhart*, 328

F.3d 418, 426 (8th Cir. 2003) (record showed that multiple providers each saw

claimant on multiple occasions as part of a treatment team and could provide

longitudinal perspective of claimant's impairment). Inasmuch as neither Dr.

Modad or FNP Hagene were a treating source, the ALJ did not err in failing to

accord controlling weight to their November 2011 Assessments.

Nevertheless, a review of the ALJ's decision shows her to have provided good reasons to accord little weight to these Assessments. The ALJ noted the opinions to have very little objective support with no explanation as to how the conclusions were reached or the evidence relied upon. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). The ALJ also noted that the opinions appeared to be based largely on plaintiff's subjective complaints, which the ALJ found not to be credible. Where a physician's opinions are largely based on a claimant's subjective complaints rather than on objective findings, an ALJ does not err in giving such opinions less than controlling weight. *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012). Finally, the ALJ noted plaintiff's lack of a treatment relationship with Dr. Modad. 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i).

Because the ALJ's determination to accord little weight to the November 2011 RFC Assessments is supported by good reasons and substantial evidence, the Court defers to this determination.

2. *Dr. Spencer*

The ALJ accorded little weight to Dr. Spencer's April 2011 opinion, finding it to be inconsistent with other evidence of record demonstrating that plaintiff's

condition improves with medication. The ALJ also noted this to be a one-time examination and that, although Dr. Spencer opined that plaintiff's mental impairment would interfere with employment, he did not render an opinion as to what plaintiff remained able to do despite her symptoms. (Tr. 40.) Because these reasons are supported by substantial evidence on the record as a whole, the Court defers to the ALJ's determination.

First, as noted by the ALJ, the record shows plaintiff's mental condition to improve with medication and indeed to alleviate plaintiff's symptoms of anxiety and depression. *See Brace v. Astrue*, 578 F.3d 882, 885-86 (8th Cir. 2009) (evidence showed that, when taken, medication was successful in controlling mental illness). Notably, Dr. Spencer rendered his opinion based on a one-time examination that occurred after plaintiff had been off of her medication for a period of months. An ALJ does not err in discounting opinion evidence where the record shows the claimant not to have been taking effective medication during the time the physician opined claimant's condition was disabling. *Id.* at 886. *See also Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (opinion of consulting physician who examines claimant once does not generally constitute substantial evidence). Finally, to the extent Dr. Spencer opined that plaintiff's mental impairment interfered with her ability to engage in employment, the ALJ did not err in according this opinion little weight. A medical source's opinion that a

claimant is unable to work involves an issue reserved for the Commissioner and is not the type of opinion that the Commissioner must credit. *Renstrom,* 680 F.3d at 1065; *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005).

3.    *Dr. Markway*

The ALJ accorded great weight to the opinion of the State agency psychological consultant, Dr. Markway, finding her opinion to be consistent with the treatment notes of record as well as with the clinical observations regarding plaintiff's symptoms and observations.  For the following reasons, the ALJ did not err in this determination.

Generally, "opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).  However, where opinion evidence obtained from a non-examining physician is consistent with substantial evidence on the record as a whole, an ALJ does not err in according this opinion evidence significant weight.  *Hacker v. Barnhart,* 459 F.3d 934, 939 (8th Cir. 2006).

Here, Dr. Markway considered the evidence of record through March 2011, which demonstrated that plaintiff was observed on multiple occasions to have normal mood and affect, intact judgment and insight, and intact memory.  Dr. Markway also noted records of plaintiff's treatment history with prescribed

medications as well as when she stopped taking medication.  (*See* Tr. 300-01.)  To

the extent Dr. Markway did not have records subsequent to March 2011 at the time

she rendered her opinion, a review of such records shows that plaintiff continued to

have normal psychiatric examinations; that her complaints of exacerbation of

symptoms occurred during a period when she stopped taking her medication; and

that her symptoms improved when she resumed taking medication regularly with

observations that she was calm and exhibited no anxiety or depression.  These

subsequent records do not detract from Dr. Markway's opinion and indeed provide

further support for the ALJ's finding that Dr. Markway's opinion was consistent

with the medical evidence of record.  Because the ALJ reasonably concluded that

Dr. Markway's opinion was consistent with the administrative record, this Court

will not disturb her judgment.  *Hacker*, 459 F.3d at 939.

In sum, a review of the ALJ's decision shows the ALJ to have properly

evaluated plaintiff's limitations in view of the opinion evidence of record and to

have provided good reasons for the weight she accorded the opinion evidence.

Where, as here, there are conflicts in the evidence, including medical opinion

evidence, it is the duty of the Commissioner to resolve such conflicts.  *Renstrom,*

680 F.3d at 1065; *Spradling v. Chater*, 126 F.3d 1072, 1075 (8th Cir. 1997);

*Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995).  For the reasons set out above,

substantial evidence on the record as whole supports the ALJ's determination as to

the weight she accorded the opinion evidence in this cause.

B.    Credibility

In determining the credibility of a claimant's subjective complaints, the ALJ
must consider all evidence relating to the complaints, including the claimant's
prior work record and third party observations as to the claimant's daily activities;
the duration, frequency and intensity of the symptoms; any precipitating and
aggravating factors; the dosage, effectiveness and side effects of medication; and
any functional restrictions. *Halverson v. Astrue,* 600 F.3d 922, 931 (8th Cir.
2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history
omitted). While an ALJ need not explicitly discuss each *Polaski* factor in her
decision, she nevertheless must acknowledge and consider these factors before
discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959,
968 (8th Cir. 2010).

When, on judicial review, a plaintiff contends that the ALJ failed to properly
consider her subjective complaints, "the duty of the court is to ascertain whether
the ALJ considered all of the evidence relevant to the plaintiff's complaints . . .
under the *Polaski* standards and whether the evidence so contradicts the plaintiff's
subjective complaints that the ALJ could discount his or her testimony as not
credible." *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). It is not
enough that the record merely contain inconsistencies. Instead, the ALJ must

specifically demonstrate in her decision that she considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel,* 239 F.3d 958, 962 (8th Cir. 2001). The determination of a claimant's credibility is for the Commissioner, and not the Court, to make. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Pearsall*, 274 F.3d at 1218.

Here, the ALJ set out numerous inconsistencies in the record upon which she found plaintiff's subjective complaints not to be entirely credible. First, the ALJ noted that objective medical evidence did not support the severity of plaintiff's complaints as they related to her physical impairments. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (absence of objective medical evidence supporting subjective allegations is one factor the ALJ is required to consider). With respect to plaintiff's mental impairments, the ALJ noted that medication improved her condition such that she reported not having any difficulty meeting home, work, or social obligations and her condition appeared to stabilize with medication. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (impairments that are controllable or amenable to treatment do not support a finding of disability). The ALJ also noted that, even when plaintiff had been off of her medication for a period of time, she nevertheless continued to exhibit essentially normal behavior,

with psychiatric examinations continually showing clinically normal results. The ALJ further noted that plaintiff never established care with a mental health professional nor required inpatient treatment or hospitalization for her symptoms. *See Black v. Apfel,* 143 F.3d 383, 386-87 (8th Cir. 1998) (conservative course of treatment inconsistent with complaints of debilitating symptoms).

In addition, the ALJ noted that plaintiff's non-compliance in taking her medication eroded her credibility. While the ALJ properly observed that financial restrictions affected plaintiff's ability to comply with her medication regimen after visiting Dr. Geronimo in December 2010, the record nevertheless showed that plaintiff stopped taking her medication of her volition prior to that time. *See Wildman,* 596 F.3d at 968-69 (an ALJ may consider a claimant's non-compliance with prescribed treatment as a factor in determining credibility).

The ALJ noted plaintiff's earnings record to be insubstantial prior to her alleged onset date, suggesting that plaintiff worked on a part-time basis. *See Pearsall*, 274 .3d at 1218 (lack of work history may indicate lack of motivation to work rather than lack of ability); *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (claimant's credibility lessened by poor work history). The ALJ also noted that plaintiff had earnings after her alleged onset date, including earnings in the fourth quarter of 2010 as well as in the second and third quarters of 2011. *See Goff,* 421 F.3d at 792-93 (fact that claimant worked with impairment relevant to

credibility determination); *Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (daily activities, which included work activity, inconsistent with disabling complaints).

Finally, the ALJ noted plaintiff's statements themselves to be inconsistent, noting specifically that plaintiff's testimony that her mental conditions had worsened over time was inconsistent with her own reports to her physicians in December 2010 and September 2011 that she was not experiencing unusual anxiety or depression, that she was having no difficulties meeting her obligations, and that she felt her condition was stable. *E.g., Ply v. Massanari*, 251 F.3d 777, 779 (8th Cir. 2001) (inconsistency in claimant's statements valid reason to discredit subjective complaints).

These reasons to discredit plaintiff's subjective complaints are supported by substantial evidence on the record as a whole.

To the extent plaintiff argues that the ALJ erred in her consideration of plaintiff's daily activities by failing to consider the context in which she performs them, *i.e.,* that she primarily stays at home and forgets simple steps while performing routine chores, the undersigned notes that the ALJ did not discredit plaintiff's subjective complaints on account of her daily activities but instead considered her "limited daily activities . . . to be outweighed by other factors discussed in this decision." (Tr. 39.) In determining a claimant's credibility, an

ALJ is permitted to consider the strength of one *Polaski* factor against inconsistencies in the record relating to the other factors. Where the strength of one factor does not outweigh other inconsistencies in the record, an ALJ does not err in finding a claimant's subjective complaints not to be credible. *See Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996). Nevertheless, because the ALJ identified numerous inconsistencies in the record, her failure to discuss plaintiff's daily activities in detail does not undermine her overall credibility determination. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth.").

Accordingly, in a manner consistent with and as required by *Polaski*, the ALJ considered plaintiff's subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from her credibility. Because the ALJ's determination not to credit plaintiff's subjective complaints is supported by good reasons and substantial evidence, this Court must defer to this determination. *Renstrom,* 680 F.3d at 1065; *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005).

C.    Combined Effect of Impairments

Plaintiff claims that the ALJ failed to consider the combined effect of all of her impairments, specifically arguing that the ALJ failed to consider her migraine

headaches in conjunction with her other impairments.  For the following reasons, plaintiff's argument fails.

As an initial matter, the undersigned notes that, other than plaintiff's discredited testimony, no evidence appears in the record that plaintiff suffered from migraine headaches or any other headache condition during her alleged period of disability.  Subjective statements alone cannot constitute a basis upon which to find the existence of an impairment.  *See* 20 C.F.R. §§ 404.1528(a), 416.928(a).  Instead, to be considered as a basis for disability, a physical impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms."  20 C.F.R. §§ 404.1508, 416.908.  Without medical evidence showing the existence of such an impairment, the condition cannot constitute a basis for disability.  20 C.F.R. §§ 404.1508, 416.908; 20 C.F.R. §§ 404.1528(a), 416.928(a).  The claimant bears the burden of providing such medical evidence to the Commissioner.  20 C.F.R. §§ 404.1512, 416.912.  Here, no medical evidence establishes migraine headaches to be a medically determinable impairment.  As such, the ALJ did not err in failing to consider the condition.

Nevertheless, a review of the ALJ's decision shows her to have recited all of plaintiff's medically determinable physical and mental impairments, to have thoroughly discussed the evidence of record relating to all such impairments, and

to have expressly stated that she considered all of plaintiff's symptoms and plaintiff's impairments both individually and in combination. (*See* Tr. 34, 36.) In such circumstances, it cannot be said that the ALJ failed to properly consider the combined effect of plaintiff's impairments. *Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005). Plaintiff's claim otherwise is without merit.

D.    Vocational Expert Testimony

Plaintiff claims that the ALJ erred when she relied on interrogatory responses given by the vocational expert to find plaintiff not disabled inasmuch as the hypothetical upon which the expert based her responses did not include limitations on account of plaintiff's migraine headaches, carpal tunnel, or inability to leave her home often. Plaintiff also contends that the hypothetical did not contain any limitations as opined by Dr. Modad and FNP Hagene in their Assessments. Plaintiff argues that these limitations preclude her performance of the jobs described by the vocational expert.

As discussed *supra* at Section V.C, plaintiff's claimed migraine headaches are not a medically determinable impairment and thus cannot be considered as a basis for disability. Likewise, plaintiff's claimed carpal tunnel syndrome is not a medically determinable impairment inasmuch as no objective medical evidence of record establishes its existence. Instead, the only evidence of record relating to carpal tunnel consists of plaintiff's subjective complaints of numbness and

tingling.  The medical evidence contains no record of examination, testing, or any other objective sign of such impairment.  Without medical evidence showing the existence of carpal tunnel, the condition cannot constitute a basis for disability.  20 C.F.R. §§ 404.1508, 416.908; 20 C.F.R. §§ 404.1528(a), 416.928(a).  Accordingly, the ALJ did not err in failing to include in the hypothetical question limitations relating to migraine headaches and carpal tunnel syndrome.  *See Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (ALJ may omit alleged impairments from hypothetical when there is no medical evidence that they impose any restrictions on functional abilities).

To the extent plaintiff argues that the ALJ failed to include in the hypothetical question a limitation consistent with her claim that she does not leave the house often, the undersigned notes that the ALJ properly found plaintiff's subjective complaints not to be credible.  Hypothetical questions need only include those limitations found credible by the ALJ.  *Gragg v. Astrue*, 615 F.3d 932, 940 (8th Cir. 2010).  The ALJ therefore did not err in failing to include this alleged limitation.

Finally, because the ALJ properly discredited the opinion evidence from Dr. Modad and FNP Hagene, she did not err by failing to include in the hypothetical the limitations opined therein.  *Ostronski v. Chater*, 94 F.3d 413, 420-21 (8th Cir. 1996) (hypothetical need not include limitations that were contained in physician's

opinion properly discredited by ALJ).

Because the challenged hypothetical question posed to the vocational expert included those impairments and limitations properly found by the ALJ to be substantially supported by the record as a whole, the ALJ did not err in her hypothetical or in her reliance on the answers given in response to find plaintiff not disabled. *Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011); *Buckner,* 646 F.3d at 560-61.

## VI. Conclusion

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination that plaintiff was not disabled from November 1, 2010, through the date of the decision is supported by substantial evidence on the record as a whole, and plaintiff's claims of error should be denied. Inasmuch as there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *see also Buckner,* 646 F.3d at 556.

Therefore,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is affirmed, and plaintiff's Complaint is dismissed with prejudice.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.


       /s/  Terry I. Adelman

UNITED STATES MAGISTRATE JUDGE


Dated this _4th_ day of _September_, 2014.